UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE TODD PEKAREK, | No. 2:13-cv-1451 DAD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

On January 29, 2010, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") alleging disability beginning on January 1, 2010. (Transcript ("Tr.") at 152-72.) Plaintiff's application was denied initially, (id. at 97-101), and upon reconsideration. (Id. at 105-09.) Thereafter, plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on

1

July 21, 2011.  (Id. at 33.)  Plaintiff was represented by an attorney and testified at the administrative hearing.  (Id. at 33-34.)  In a decision issued on August 26, 2011, the ALJ found that plaintiff was not disabled.  (Id. at 27.)

      The ALJ entered the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since January 25, 2010, the application date (20 CFR 416.971 *et seq*.).
>
> 2.  The claimant has the following severe impairments:  morbid obesity, lumbago, cervicalgia, right eye visual impairment, borderline intellectual functioning, anxiety disorder, and personality disorder (20 CFR 416.920(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can only occasionally climb, stoop, kneel, crouch, crawl, or have contact with the public; can frequently balance; should avoid concentrated exposure to extreme cold and excessive vibration; and can perform work that requires no detailed vision (no fine detailed work) or high volume production line work with mandatory quotas and only simple English skills with no complex, technical or scientific instructions and simple repetitive tasks.
>
> 5.  The claimant has no past relevant work (20 CFR 416.965).
>
> 6.  The claimant was born on August 31, 1965 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform  (20 CFR 416.969 and 416.969(a)).

/////

/////

/////

> 10. The claimant has not been under a disability, as defined in the Social Security Act, since January 25, 2010, the date the application was filed (20 CFR 416.920(g)).[1]

(Id. at 21-27.)

On May 21, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's August 26, 2011 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 19, 2013.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

---

[1] Although the ALJ's opinion states that plaintiff's application was filed on January 25, 2010, plaintiff's handwritten application is dated January 29, 2010. Accordingly, it is unclear to the court whether plaintiff's application was filed on January 25 or January 29, 2010.

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In his pending motion plaintiff asserts the following two principal claims: (1) the ALJ improperly rejected the medical opinions of plaintiff's treating physicians; and (2) the ALJ erred in rejecting plaintiff's own testimony and by failing to adequately address the third party statement offered by plaintiff's mother.

**I.      Medical Opinion Evidence**

Plaintiff argues that the ALJ erred by rejecting the May 13, 2009 opinion of Dr. James G. Frank as well as the July 1, 2011 jointly issued opinion of Dr. Frank and Dr. John Lindgren, both of whom were plaintiff's treating physicians. (Pl.'s MSJ (Dkt. No. 16) at 10-16.[2])

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

as an individual.  Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).  The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.)  Finally, greater weight should be given to the "'opinion of a specialist about medical issues related to his or her area of specialty.'"  Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)).  Although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

In this case, on May 13, 2009, Dr. James G. Frank completed a "Complete Medical Report Mental," in which he indicated that he first began treating plaintiff on February 26, 2007, and had seen plaintiff 87 times.  (Tr. at 326.)  Dr. Frank stated that plaintiff, at times, "has been floridly psychotic, suicidal, and struggled with serve depression." (Id.)  Dr. Frank also completed a Medical Assessment of Ability to do Work-Related Activities (Mental) form in which he opined, in part, that plaintiff's ability to deal with the public, use judgment, deal with work stress, function independently and maintain attention/concentration was poor, as indicated by plaintiff's disorganized thinking, avolition, blunted affect and because "Rorschach supports diagnosis of psychosis." (Id. at 327.)

Plaintiff's treating physician, Dr. Frank, also opined that plaintiff had no ability to understand, remember and carry our complex job instructions and only a poor ability to understand, remember and carry out detailed job instructions. (Id. at 328.)  According to Dr. Frank, that assessment was also supported by the Rorschach test and by plaintiff's borderline intellectual functioning, which Dr. Frank had observed over time in both plaintiff's group and

5

1    individual therapy sessions.  (Id.)

2    Nonetheless, the ALJ afforded "reduced weight" to Dr. Frank's May 13, 2009 opinion

3    "because the medical evidence of records (sic) does not support his underlying predicate (i.e. that

4    the claimant is floridly psychotic, etc.)."[3]  (Id. at 24.)  That is the complete extent of the reasoning

5    offered by the ALJ in support of the decision to ascribe reduced weight to treating physician Dr.

6    Franks' May 13, 2009 opinion.

7    "The primary function of medical records is to promote communication and

8    recordkeeping for health care personnel – not to provide evidence for disability determinations."

9    Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007).  Moreover,

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

14   Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  See also Tackett v. Apfel, 180 F.3d

15   1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary

16   support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599,

17   602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do

18   not suffice).  Here, the ALJ did not set forth his own interpretation of the evidence of record nor

19   did the ALJ explain why that interpretation of the medical evidence, rather than the opinion of

20   treating physician Dr. Frank, were correct.

---

[3] In a December 3, 2008 opinion, Dr. Frank had explained that he was a psychologist and worked "at the Stockton Parole Unit for the Parole Outpatient Clinic of the California Department of Corrections and Rehabilitation" ("CDCR").  (Tr. at 319.)  By that time, Dr. Frank had met with plaintiff on 70 occasions and at one of those sessions had administered the Rorschach Inkblot Test.  (Id.)  According to Dr. Frank, plaintiff "had a clinically elevated score on the Schizophrenia Index," which "argues strongly for the presence of a major though disorder . . . ."  (Id.)  Dr. Frank also opined that the "Rorschach results are very unlikely to be faked – particularly by a low-functioning man" like the plaintiff "and strongly argue for the presence of a major, likely debilitating psychiatric disorder."  (Id.)  Finally, Dr. Frank stated that he had "developed expertise on malingering in correctional settings" and was "very confident" that plaintiff "is NOT malingering his psychiatric problems."  (Id.)  The ALJ also afforded this opinion by Dr. Frank "reduced weight," although plaintiff does not challenge that finding.  (Id. at 24.)

1       Moreover, on July 1, 2011, Dr. Frank and Dr. John Lindgren drafted a joint letter in which
2 they stated that Dr. Frank, a staff psychologist, had now met with the plaintiff for "over 175
3 assessment and treatment sessions, including initial evaluations, psychological testing, group
4 counseling and individual therapy," and that Dr. Lindgren, a staff psychiatrist with the CDCR
5 Parole Outpatient Clinic, had met with plaintiff an additional "19 times to address diagnostic and
6 medication issues" over the course of several years. (Tr. at 423.) According to both treating
7 doctors, their "records and interview information" indicated that plaintiff had been "low
8 functioning for most of his life," and that "during his 2007 prison stay . . . became floridly
9 psychotic, suicidal and depressed . . . ." (Id.)

10       According to Dr. Frank, he had "conducted several forms of psychological testing [on
11 plaintiff] over the past four years, with numerous results indicating fundamentally impaired
12 functioning." (Id.) Dr. Frank reported as follows. Plaintiff was "just several IQ points above the
13 cutoff for mental retardation," and his performance on the "Montreal Cognitive Assessment"
14 indicated a "moderate cognitive impairment range, scoring similarly to persons who are
15 diagnosed with Dementia." (Id.) A "series of neuropsychological screening tests (using the Strub
16 and Black method) indicate[d] significantly impaired functioning in terms of attention, frontal
17 lobe function, memory . . . and higher cognitive functions." (Id.) Moreover, the "Rorschach
18 results indicate[d] the presence of a major psychotic disorder (elevated Schizophrenia Index) as
19 well as chronic deficits in basic coping." (Id.) In the end, it was the expressed opinion of both
20 treating physicians, Dr. Frank and Dr. Lindgren, that plaintiff was "not currently capable of
21 getting and consistently keeping a job . . . ." (Id. at 424.)

22       Yet, the ALJ also afforded this opinion "reduced weight," stating that the "admittedly
23 scant records from the Department of Corrections simply do not document any such problems,
24 and no other treating health provider has noted such severe symptoms in their evaluations of the
25 claimant." (Id. at 25.)

26       Dr. Frank and Dr. Lindgren, however, were plaintiff's longtime treating physicians and
27 they reached their opinions based both on the objective testing referenced in their opinion and on
28 their numerous in person examinations, meetings and sessions with plaintiff. Moreover, as noted

above, to say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity required in order to reject such treating physician opinions. Rather, the ALJ must set forth his own interpretations and explain why they, rather than the doctors', are correct. Embrey, 849 F.2d at 421-22. See also Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion").

Compounding his error, the ALJ elected to afford greater weight, indeed "substantial weight" to the opinion of a nontreating, nonexamining physician. (Tr. at 25.) Of course, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831. See also Gundy v. Astrue, 500 Fed. Appx. 609, 611 (9th Cir. 2012) ("the opinion of a nonexamining physician is entitled to less weight than that of an examining physician").[4]

For all of the reasons stated above, the ALJ erred with respect to his treatment of the medical opinion evidence. Accordingly, the court finds that plaintiff is entitled to summary judgment in his favor with respect to this claim.

## II. Subjective Testimony

Plaintiff asserts that the ALJ erred by rejecting plaintiff's subjective testimony and by failing to address the third party statement offered by plaintiff's mother. (Pl.'s MSJ (Dkt. No. 16) at 16-19.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

>the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
>Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that, although the medical evidence of record documented a "long history of treatment for the claimant's medically determinable impairments," that medical evidence did not "support [plaintiff's] allegations regarding either the intensity and persistence of her (sic) symptoms or the extent of his resulting functional limitations." (Tr. at 23.) Again, this brief and conclusory statement is the full extent of the reasoning offered by the ALJ in support of the decision to reject plaintiff's testimony.

/////

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms.  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).  See also Treichler v. Commissioner of Social Sec. Admin., --- F. 3d ---, ---, 2014 WL 7332774, at *9 (9th Cir. Dec. 24, 2014) ("An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review."); Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue.")[5]; Smolen, 80 F.3d at 1282 ("the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom"); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

Here, plaintiff testified that he suffered from depression, mood swings, paranoia, auditory hallucinations and impairments with respect to his concentration and memory.  (Tr. at 39-42.)  That testimony is fully consistent with, and supported by, the opinions offered by his treating physicians, Dr. Frank and Dr. Lindgren, which the ALJ improperly rejected.

With respect to the third party witness statement, plaintiff's mother completed a Function Report–Adult–Third Party form on February 19, 2010, providing her testimony as to plaintiff's impairments.  (Tr. at 200-07.)  The ALJ's decision does not reference that statement at all.  The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).  Lay witness testimony "cannot be disregarded

---

[5] See fn. 4, above.

1    without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  If the ALJ chooses
2    to reject or discount the testimony of a lay witness, he or she must give specific reasons germane
3    to each particular witness in doing so.  Valentine, 574 F.3d at 694; Regennitter v. Commissioner
4    of Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 919
5    (9th Cir. 1993).  Therefore, the ALJ's failure to address and provide reasons for not adopting the
6    witness statement offered by plaintiff's mother also constitutes error.  See Tobeler v. Colvin, 749
7    F.3d 830, 834 (9th Cir. 2014) ("lay witness testimony as to a claimant's symptoms or how an
8    impairment affects ability to work is competent evidence and therefore cannot be disregarded
9    without comment"); Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir.
10   2006) ("ALJ must consider lay witness testimony").

11   Defendant argues that the ALJ's error in this regard was harmless because the ALJ gave
12   "valid reasons for discounting Plaintiff's subjective complaints," and those reasons are "equally
13   relevant" to the statement offered by plaintiff's mother.  (Def.'s MSJ (Dkt. No. 19) at 12.)  "[A]n
14   ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that
15   the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims."
16   Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (quotation omitted).  Here, however, the
17   ALJ also failed to refer to any evidence, or valid reason, in improperly discrediting plaintiff's
18   testimony.

19   For the reasons stated above, the ALJ's decision does not offer specific, clear and
20   convincing reasons for rejecting plaintiff's testimony regarding his subjective symptoms and their
21   severity.  The ALJ's decision also does not address or offer a specific and germane reason for
22   rejecting the third party statement offered by plaintiff's mother.

23   Accordingly, plaintiff is entitled to summary judgment in his favor with respect to this
24   claim as well.

25   **III.   Scope of Remand**

26   With error established, the court has the discretion to remand or reverse and award
27   benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose
28   would be served by further proceedings, or where the record has been fully developed, it is

1   appropriate to exercise this discretion to direct an immediate award of benefits.  See Garrison v.
2   Colvin, 759 F.3d 995, 1021 (9th Cir. 2014) (finding that it was an abuse of discretion for the
3   district court to remand for further proceedings where the credit-as-true rule is satisfied and the
4   record afforded no reason to believe that plaintiff was not disabled); Benecke, 379 F.3d at 596
5   ("Because the evidence establishes that Benecke would be unable to maintain employment while
6   managing her pain and fatigue, remand for further administrative proceedings serves no useful
7   purpose and is unwarranted.").  However, where there are outstanding issues that must be
8   resolved before a determination can be made, or it is not clear from the record that the ALJ would
9   be required to find plaintiff disabled if all the evidence were properly evaluated, remand is
10  appropriate.  Benecke, 379 F.3d at 594.

11         Here, the court finds that the record has been fully developed, that the ALJ failed to
12  provide a legally sufficient reason for rejecting plaintiff's testimony, the third party statement
13  offered by plaintiff's mother and the medical opinions offered by treating physicians Dr. Frank
14  and Dr. Lindgren.  Moreover, if the medical opinions offered by treating physicians Dr. Frank and
15  Dr. Lindgren were properly credited, the ALJ would be required to find plaintiff disabled on
16  remand.

17         In this regard, a Vocational Expert testified at the administrative hearing on July 21, 2011.
18  When asked a hypothetical question that included the limitations indicated by the July 1, 2011
19  opinion of Dr. Frank and Dr. Lindgren, the Vocational Expert testified that the limitations
20  indicated by that opinion would preclude plaintiff from all work.  (Tr. at 47.)  Thus, had the
21  ALJ's decision been based on the Vocational Expert's testimony in response to the proper
22  hypothetical question that included all of plaintiff's limitations, the ALJ would have found
23  plaintiff to be disabled.

24         Accordingly, the court finds that in this case it is appropriate to remand with the direction
25  to award benefits.  See Martinez v. Colvin, 585 Fed. Appx. 612, 613 (9th Cir. 2014) ("if
26  Martinez's testimony and Dr. Novak's opinion were properly credited, Martinez would be
27  considered disabled.  We therefore reverse the decision of the district court and remand with
28  /////

instructions to remand to the ALJ for the calculation and award of benefits")[6]; Garrison, 759 F.3d at 1023 ("Garrison satisfies all three conditions of the credit-as-true rule and . . . a careful review of the record discloses no reason to seriously doubt that she is, in fact, disabled.  A remand for a calculation and award of benefits is therefore required under our credit-as-true precedents."); Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining physicians); Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994) (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for summary judgment (Dkt. No. 16) is granted;

    2. Defendant's cross-motion for summary judgment (Dkt. No. 19) is denied;

    3. The Commissioner's decision is reversed; and

    4. This matter is remanded with instructions to award benefits.

Dated:  February 10, 2015

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\pekarek1451.ord.docx

---

[6] See fn. 4, above.